IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Randall Martin, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Jo Anne B. Barnhart, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No. 8:06-0003-HFF-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Randall Martin, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration denying his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 53 years old on the date of the Administrative Law Judge's (ALJ) decision. The plaintiff has a "high school and above" education and past relevant work as a room attendant, manager at a video poker casino, truck driver, textile mill worker, auto mechanic, handyman, carpenter's helper, and general laborer. (Tr. 236-43.) The alleged onset date of disability of the plaintiff is June 30, 2000. (Tr. 45, 51, 222, 235.) The plaintiff alleges disability as a result of back pain, right hip and leg pain, shortness of breath, obesity, problems with his right hand due to possible carpal tunnel syndrome, and neck pain.

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff filed applications for disability insurance benefits and Supplemental Security Income on October 8, 2002. (Tr. 45-47.) The plaintiff's applications were denied after a hearing. (Tr.14-16, 17-26.) The ALJ's decision then became the Commissioner's final decision for judicial review.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. On October 8, 2002, the claimant protectively filed Title II and Title XVI applications, alleging a disability onset date of February 4, 2003.

2. The claimant met the earnings requirements of the Act at the time disability is alleged to have commenced, and he has continued to be insured at least through the date of this decision.

3. For the purposes of this decision, it is presumed that the claimant meets all of the nondisability requirements of Title XVI.

4. The claimant is 53 years old and is therefore in the "approaching advanced age" category. He has a "high school and above" education.

5. The claimant's past relevant work experience includes jobs as a room attendant and manager at a video poker casino. His job as a casino room attendant was unskilled, "light" work, and his job as a casino manager was semi-skilled to skilled, "light" work.

6. The claimant has no skills from his past work that are transferable to other jobs.

7. The claimant has not engaged in substantial gainful activity at any time since February 4, 2003.

8. The claimant has the following medically determinable, "severe" impairments: degenerative disease affecting the cervical and lumbar spines, with neck, back, and occasional right leg pain.

9. The claimant has suffered no mental or physical impairment, or combination of impairments, which meets or is medically equivalent to any of the impairments listed in Appendix 1 to Subpart P of Social Security Regulations No. 4.

10. The claimant's testimony was not fully credible with respect to his symptoms, including pain, and resulting functional limitations.

11. The claimant is able to perform "medium" work as set forth by the State Agency medical consultant at Exhibit 9f. Specifically, he is able [to] sit, stand and/or walk for about six hours of an eight-hour workday. To the extent that he needs to alternate between sitting and standing, such an accommodation could be made during customary breaks and meal periods over the course of regular, eight-hour work day. He can lift 25 pounds frequently and 50 pounds occasionally, and he has no limitations as to using his upper or lower

    extremities for pushing/pulling.  He can occasionally engage in climbing and stooping, and he can engage in frequent balancing, kneeling, crouching, and crawling.  He has no manipulative, visual, communicative, or environmental limitations.

12. With the above described residual functional capacity, the claimant is able to perform his past relevant work as a casino room attendant and as a casino manager.

13. Because the claimant is able to perform his past relevant work, he is not "disabled" within the meaning of the Social Security act.  20 CFR §§ 404.1520(f) and 416.920(f).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  Social Security Ruling ("SSR") 82–62.  The plaintiff bears the burden

3

of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the

Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) assessing his residual functional capacity (RFC); (2) evaluating the opinion of his treating physician; (3) assessing his allegations of pain; and (4) failing to consider his obesity in conjunction with other impairments. The Court will address each alleged error in turn.

**I.     RESIDUAL FUNCTIONAL CAPACITY**

The plaintiff first contends that the ALJ's determination of his Residual Functional Capacity ("RFC") was in error because the ALJ did not perform a function-by-function analysis pursuant to Social Security Ruling ("SSR") 996-8p. Although the plaintiff styles the objection as one pertaining to the RFC analysis, the plaintiff primarily complains that the RFC determination was based on the opinion of a non-treating physician, which he contends is not substantial evidence. To the extent the plaintiff complains about the ALJ's reliance on the non-treating physician's opinion, the Court will consider that objection in relationship to the plaintiff's second allegation of error that the ALJ failed to give the plaintiff's treating physician controlling weight. In regards to whether a function-by-function analysis is required to determine the plaintiff's RFC, the Court makes the following remarks.

The plaintiff's contention that the ALJ failed to perform a "function-by-function" analysis is without merit. The "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p at *1. "To determine the claimant's RFC, the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members." *Morgan v. Barnhart*, 142 Fed. Appx. 716, 720 (4th Cir. 2005) (citing 20 C.F.R. § 404.1529(c)(3) (2004)).

SSR 96-8p provides that the assessment of residual functional capacity must be based on all of the relevant evidence, including all allegations of physical and mental limitations or restrictions. *See* SSR 96-8p. When allegations of physical and mental limitations or restrictions are made, the ALJ is to consider each function separately in making an assessment of residual functional capacity. *See Id.*

The record reveals that the ALJ recognized and applied the correct legal standard in evaluating the plaintiff's RFC. (Tr. 20.) The Court finds that the ALJ made an exhaustive analysis of the evidence of the plaintiff's condition in the record (Tr. 19-24), and specifically analyzed the plaintiff's daily activities and the effect of his impairments thereon (Tr. 19, 24).

Critically, the ALJ took into account those limitations for which there was record support. (Tr. at 21-24.) He specifically relied upon Dr. Henrich's assessment to the extent it was internally consistent with the treatment notes that the plaintiff has (1) normal spinal alignment, (2) fairly well preserved disc spaces, (3) intermittent right leg pain, (4) consistently demonstrated full range of motion of the back, (5) no neurological deficits, (6) good muscle strength, (7) normal reflexes, (8) no disc bulges or herniations. (Tr. 24.) As discussed in greater detail *infra*, the ALJ stated specific reasons for rejecting Dr. Henrich's RFC assessment to the extent he did.

But, contrary to the plaintiff's implication, an ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). The Court is satisfied that the ALJ met his burden in performing the RFC insofar as he took an exhaustive review of the record.

## II.    TREATING AND NON-EXAMINING PHYSICIAN

Next and as an extension of his first objection, the plaintiff alleges that the ALJ erred in not according the opinion of the plaintiff's treating physician, Dr. Jeremy Henrich,

controlling weight and further by adopting the opinion of a non-examining physician, Dr. Seham El-Ibiary.

It is true that the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. § 416.927(d)(2) (2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001).  A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions.  These are administrative finds reserved for the Commissioner's determination.  *See* SSR 96-2p.  Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's finds must be affirmed if substantial evidence supported the decision.  *See Blalock,* 483 F.2d at 775.

While the Fourth Circuit has emphasized the importance of the treating physician's opinion, it has also clearly held that "the testimony of a non-examining physician can be relied upon when it is consistent with the record."  *Smith v. Schweiker*, 795 F.2d, 343, 345-46 (4th Cir. 1986); *see also Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971).  Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand.  *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).  Critically, the regulations state that "because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(d)(3).

The Court is satisfied that the ALJ had substantial evidence to discount Dr. Henrich's opinion, and referred thereto, but less than satisfied that he had substantial

evidence to adopt Dr. El-Ibiary's opinion. First, the ALJ identified substantial evidence sufficient to justify a departure from the plaintiff's treating physician's opinion. Specifically, the ALJ referenced inconsistencies in Dr. Henrich's treatment notes. (Tr. 23.) The ALJ noted that the level of functioning that Dr. Henrich believed the plaintiff was able to perform in January of 2003 was in conflict with assessments made in October of 2002 and May 2003. *Id.* The ALJ's interpretation, while not the only one, is supported by substantial evidence. (*Cf.* Tr. 141,144 (noting that plaintiff can work part time and "is able to engage in education, training, [and] job preparation" *with* 143.) The ALJ also noted various inconsistencies between Dr. Henrich's opinion and other medical evidence of record. (Tr. 24.) The Court has reviewed the evidence and agrees that it is substantial and that it justified a departure from Dr. Henrich's opinion. (*See, e.g.,* Tr. 131-32, 136, 138-40, 144-53, 179, 182, 188, 190, 192, 200, 205, 211 (supporting the ALJ's observation that the plaintiff "consistently had full range of motion of the back, with no neurological deficits, good muscle strength, normal reflexes, and only occasional lumbar tenderness").)

Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation of Dr. Henrich's records is of no moment. *See Blalock,* 483 F.2d at 775. The ALJ had substantial evidence to conclude as he did and the Court will not disturb his decision.

As stated, however, the Court cannot assess the ALJ's adoption of Dr. El-Ibiary's opinion as to whether it is supported by substantial evidence. The ALJ does not discuss Dr. El-Ibiary's assessment nor does he explain with any reasonable degree of specificity why he gives substantial weight to it. Although the ALJ found that Dr. El-Ibiary's opinion was "more consistent with the totality of the evidence of record," the ALJ does not identify in what respect. (Tr. 24.) While there may be substantial evidence to reject the RFC opinion of the plaintiff's treating physician, the ALJ cannot summarily adopt the opinion of a non-examining physician without explanation. *See Smith*, 795 F.2d at 345-46. As a result, remand is necessary for the ALJ to examine and explain whether, and in what

specific respect, Dr. El-Ibiary's opinion is consistent with the record. *See Id*.; 20 C.F.R. § 404.1527(d)(3).

The plaintiff also complains that Dr. El-Ibiary did not even consider evidence of the plaintiff's obesity or degenerative arthritis. As the defendant notes, Dr. El-Ibiary, in fact, had evidence of both conditions before him (Tr. 92-93, 150, 138, 144-46, 148-50, 152) although he did not specifically refer to any of it (Tr. 161). Whether or not the ALJ had before him additional evidence of these conditions which would have differently informed Dr. El-Ibiary's opinion can be explored upon remand. The Court does not find it error, however, on its own, that Dr. El-Ibiary's opinion was based on some but not all of the evidence related to the plaintiff's obesity and degenerative arthritis. The error lies simply in the ALJ's failure to make any express comparison of the doctor's opinion with the record generally. Certainly, the basis of Dr. El-Ibiary's opinion is a part of that analysis.

### III.   PAIN

The plaintiff also contests the ALJ's assessment of his pain. Among the allegations, the plaintiff notes that the ALJ incorrectly identified the alleged onset date of disability as February 4, 2003. The defendant contends that the error is harmless and the Court agrees. The ALJ expressly stated that "most of the medical evidence pertains to the claimant's treatment prior to his alleged disability onset date of February 4, 2003, and does not establish that his pain was incapacitating." (Tr. 20.) The ALJ then proceeded to analyze substantial evidence of pain, predating the erroneously identified onset date, and found it less than fully credible. (Tr. 20-23.) In other words, the ALJ reviewed all of the plaintiff's evidence of pain. Accordingly, the ALJ would have reached the same conclusion notwithstanding the error of fact and, therefore, the error regarding the onset date is harmless. *See Mickles v. Shalala,* F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").

The actual analysis of the plaintiff's pain, however, is less than adequate. The Fourth Circuit requires a very specific analysis of claimant's pain. Specifically, the Fourth Circuit has observed that the federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lens because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

Notwithstanding the ALJ's exhaustive consideration of the record concerning evidence of the plaintiff's pain, (Tr. 20-23), the ALJ simply did not conform his analysis to the strictures of the tiered process described above. The ALJ never made the initial inquiry - whether the impairments complained of were objectively capable of creating the pain

alleged. Instead, the ALJ proceeded immediately to consideration of whether the evidence confirmed the subjective allegations of pain. As stated, such an analysis warrants remand. *See Craig*, 76 F.3d. at 596. On remand, the ALJ must consider whether the plaintiff has established a condition which could reasonably be expected to cause pain of the severity alleged. *Id.* at 593. If he has, then the plaintiff's allegations "may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.*

### IV.    OBESITY

Finally, the plaintiff maintains that, after determining the impairment to be non-severe, the ALJ failed to consider his obesity in conjunction with his other impairments.[2] The allegation is simply unsupported by the ALJ's decision. The ALJ specifically considered evidence of the plaintiff's obesity and its effects even after concluding that it was non-severe. (*See, e.g.,* Tr. 21 ("He was not in acute distress, and he was described as being only "mildly" obese. His weight that day was 260 pounds."), 22 ("He weighed 285 pounds, and he was advised to lose weight and to try to exercise to increase the muscle tone in his back.").) Accordingly, the ALJ unequivocally considered the plaintiff's obesity in making his RFC analysis. The plaintiff's assignment of error is without merit.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, with a remand of the cause to the Commissioner for further proceedings as set forth above.

IT IS SO RECOMMENDED.

                                             s/Bruce H. Hendricks
                                             United States Magistrate Judge

January 10, 2007
Greenville, South Carolina

---

[2] The plaintiff summarily contends that the ALJ improperly determined that the plaintiff's obesity is non-severe. The plaintiff makes no attempt to support his allegation in the record and the accusation is disregarded by the Court, accordingly.